UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

MARK DABNEY,                           )         CASE NO.  1:13 CV 2787
                                       )
                                       )
            Plaintiff,                 )         JUDGE CHRISTOPHER A. BOYKO
                                       )
      v.                               )
                                       )         MEMORANDUM OF OPINION
                                       )         AND ORDER
CLEVELAND HEIGHTS POLICE, et al.,      )
                                       )
            Defendants.                )

        Before the Court is *pro se* Plaintiff Mark Dabney's above-captioned *in forma*

*pauperis* Complaint.  He names the City of Cleveland Heights Police Department, University

Hospital, Dr. Sara G. West, Northcoast Behavioral Healthcare System (NCBHS) and Cuyahoga

County Probate Court as Defendants.  Mr. Dabney claims the Defendants conspired against his

rights in violation of 18 U.S.C. §§ 241, 242 and 245.  He seeks damages in the amount of

$3,138,500.00.  For the reasons set forth below, the action is dismissed.

*Background*

        In September 2012, Mr. Dabney was temporarily living in a home owned by his aunt in

Cleveland Heights, Ohio.  On or about December 28, 2012, his brother, Lavell Dabney, tried to have him "evicted" from the home.  Plaintiff challenged his threat, stating only the owner of the home could evict him.  At that point, Lavell telephoned the Cleveland Heights Police and advised that he felt threatened by Plaintiff.  Moreover, he suggested Plaintiff should be evaluated and "pink slipped."

The police asked Plaintiff for permission to escort him to an emergency room for a mental evaluation.  He declined the offer, explaining he wanted to finish his "course work, which would be finished within the next day." (Doc. No. 1 at 3).  As additional emergency personnel entered the home, Plaintiff did not believe he had a choice.  Two officers restrained Plaintiff in handcuffs behind his back and placed him on a gurney to an ambulance.  Upon arrive to University Hospital's emergency room, Plaintiff's hand cuffs were removed and he was checked in by a nurse.

The following morning, Mr. Dabney told the staff he was in the middle of completing a final examination for a course he was taking online.  Despite his concerns, Plaintiff was allegedly advised he would be transported to NCBHS, shortly.  When he arrived at NCBHS, Mr. Dabney signed several documents, was issued a hospital gown and provided pamphlets to read.

Six days after arriving at NCBHS, Plaintiff met with psychiatrist Sara West, who stated she had met with "adversarial family members."  Plaintiff disputed the characterization.  He recounted the events leading up the police arriving at the home in Cleveland Heights and added that he "suspected Lavell C. Dabney had sodomized me while I was sleeping."  (Doc. No. 1 at 4).

On January 3, 2013, Dr. West filed an action in the Cuyahoga County Probate Court to have Mr. Dabney involuntarily committed.  Plaintiff alleges Dr. West diagnosed him with a

-2-

"psychoses unspecified ," but disregarded his "preexisting medical condition."  Several years ago, Mr. Dabney claims he was diagnosed as a "hypogonadic male."  Plaintiff complains that the undisclosed symptoms of this diagnosis are exacerbated by poor diet and lack of physical activity.[1]

While Plaintiff was held at NCBHS, he claims he "faced recurring aggression from patients and staff."  This resulted in him receiving at least sixteen shots of medication that rendered him unconscious for several hours.  On one occasion,  he allegedly woke up bleeding from his rectum after a tranquilizer shot, lying on sheets stained with blood.  Mr. Dabney claims he filed a police report and the police confiscated the sheets.  In February 2013, Plaintiff states he was examined at the Cleveland Clinic for sexual assault.

Consistent with the probate order Dr. West sought and was granted by the court, Plaintiff was forcibly medicated in March 2013.  At the end of the month, Dr. West allegedly asked Mr. Dabney if he wanted to go home.  He agreed.  After signing "requested documents, [Plaintiff] accepted the cab ride home." (Doc. No. 1 at 6).

Mr. Dabney now complains the Defendants have caused him physical pain and mental anguish.  Moreover, he alleges they violated "specific federal laws that protect my civil rights as a human being." (Doc. No. 1 at 3).  He seeks $3,138,500.00 in damages to cover his student loan debt and life time earning potential, which he estimates at $100,000.00 over the next thirty years.

*Standard of Review*

---

[1]Male hypogonadism is a condition in which the body doesn't produce enough testosterone . . .  or has an impaired ability to produce sperm or both. *See* http://www.mayoclinic.org/diseases-conditions/male-hypogonadism/basics/definition/con-20014235

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss any claim under 28 U.S.C. §1915(e) if it fails to state a basis upon which relief can be granted, or if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996).  For the reasons stated below, this action is dismissed pursuant to 28 U.S.C. §1915(e).

*Failure to State a Claim*

**1. Criminal Statutes**

To the extent Mr. Dabney seeks to initiate criminal proceedings against the Defendants, he cannot.  Private parties have no right to file criminal complaints under 18 U.S.C. §§ 241- 42 (the criminal analogue of 42 U.S.C. § 1983 and *Bivens* ). *Cok v. Cosentino,* 876 F.2d 1 (1st Cir1989); *see also Fulson v. City of Columbus*, 801 F.Supp. 1, 6 (S.C. Ohio 1992) ("It is well established that a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.")  Therefore, any violation of these sections of the federal criminal code does not give rise to an independent, private cause of action. *Morganroth & Morganroth v. DeLorean*, 123 F.3d 374, 386 (6th Cir. 1997).

**2. 42 U.S.C. § 1983**

Even liberally construing this as a civil rights action pursuant to 42 U.S.C. § 1983, Mr. Dabney has failed to state a claim.  To prevail in a civil rights action under Section 1983, a plaintiff must plead and prove that the defendants, acting under color of state law, deprived the plaintiff of a right secured by the Constitution and law of the United States.  *Parratt v. Taylor*,

451 U.S. 527, 535 (1981), overruled on other grounds, *Daniels v. Williams*, 474 U.S. 327 (1986). Section 1983 alone creates no substantive rights; rather, it is the means through  which a plaintiff may seek redress for deprivations of rights established in the Constitution or federal laws. *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979).  The statute applies only if there is a deprivation of a constitutional right. *See e.g., Paul v. Davis*, 424 U.S. 693, 699-701(1976); *Baker*, 443 U.S. at 146-47.  Thus, "[t]he first inquiry in any § 1983 suit ... is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws' " of the United States. *Baker*, 443 U.S. at 140.

Mr. Dabney alleges "his rights have been violated," but does not identify what rights under the Constitution he believes the Defendants violated.   Although the most frequent situation in which a  constitutional deprivation occurs is when a state official himself takes affirmative action to violate the protected right, *see, e.g., Screws v. United States*, 325 U.S. 91 (1945)(where local law enforcement officials themselves beat a citizen to death), Mr. Dabney has not articulated in what actions the Defendants engaged and how these actions violated his Constitutional rights.

Principles requiring generous construction of *pro se* pleadings are not without limits. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985).  District courts are not required to conjure up questions never squarely presented to them or to construct full blown claims from sentence fragments.  *Id*. at 1278.  To do so would "require ...[the courts] to explore exhaustively all potential claims of a *pro se* plaintiff, ... [and] would...transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Id.* at 1278.  Dismissal is appropriate "when the facts alleged rise to the level of the irrational or wholly incredible ...".  *Denton v.*

*Hernandez*, 504 U.S. 25 (1992).  Even liberally construed, the Complaint does not contain allegations reasonably suggesting Mr. Dabney might have a valid federal claim.


**3. Abstention**

Plaintiff protests the Probate Court's order allowing Dr. West to have him involuntarily committed and medicated.  There is no indication whether he appealed the Probate Court's decision, or if it is presently pending before the Ohio Supreme Court.

Even if Mr. Dabney raised any Constitutional claims, which this Court is not conceding, federal courts should abstain from entertaining cases involving issues that are the subject of currently pending state judicial proceedings.  The *Younger v. Harris* abstention doctrine applies when: (1) there is an ongoing state proceeding which is judicial in nature; (2) important state interests are involved; and (3) the plaintiff will have an adequate opportunity in the state proceeding to raise the constitutional challenges presented by the federal law suit. *Younger v. Harris*, 401 U.S. 37, 43–44 (1971); *see Huffman v. Pursue, Ltd.*, 420 U.S. 592, 603–05 (1975) (discussing that *Younger* is grounded in principles of comity and noting that federal courts should not, in certain circumstances, interfere with state courts); *see also Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431–32 (1982) (applying the abstention defined in *Younger*, a criminal case, to civil cases); *Rossi v. Gemma*, 489 F.3d 26, 34–35 (1st Cir.2007); *Brooks v. N .H. Sup.Ct.*, 80 F.3d 633, 638 (1st Cir.1996).

Absent extraordinary circumstances, abstention is mandatory, not discretionary, where the federal lawsuit would interfere in a matter that satisfies the three-part test for abstaining under *Younger*. *See Rio Grande Cmty. Health Ctr., Inc. v. Rullan*, 397 F.3d 56, 68 (1st Cir.2005).  It

-6-

appears all three factors warrant this Court's abstention.

As to the first factor, the proper care of mentally ill persons who may be dangerous to themselves or others because of their mental illness, or who are sufficiently incapacitated by mental illness so as not to be able to provide for their own personal needs or safety, is undoubtedly a important matter of state interest. *See* OAC § 5122-14-11 (establishing legislative purpose of laws governing emergency involuntary admissions to, *inter alia*, prevent mentally ill people from harming themselves or others). The involuntary civil commitment of the mentally ill is premised upon the state's power and concomitant duty to protect the public from harm or a threat of injury to their person or property. *See Rone v. Fireman*, 473 F.Supp. 92, 118 (D.C. Ohio 1979).

Second, although Mr. Dabney's right to privacy precludes the Court from independently checking the Probate Court's docket, Plaintiff could certainly have filed an appeal from the commitment order during the time this case was pending. *See Bettencourt v. Bd. of Reg. in Med.*, 904 F.2d 772, 777 (1st Cir.1990) ("In determining whether federal proceedings would interfere with ongoing state proceedings, the proper point of reference is the date plaintiff filed his federal complaint.") Otherwise, Mr. Dabney has not advised the Court whether he has a pending appeal or attempted to exhaust his state court remedies in this matter.

As to the third factor, there is no indication Mr. Dabney was denied the opportunity to adjudicate all of the issues he raises in this action in the state courts. Although he does not indicate to this Court what Constitutional claims he might raise, there is no allegation he was deprived of an opportunity to do so in state court.

4. *Rooker-Feldman*

-7-

Even if Mr. Dabney fully exhausted his state court remedies, this Court does not have jurisdiction over challenges to state court decisions even if those challenges allege that the state court's action was unconstitutional.  *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 483 n. 16 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923).  Federal appellate review of state court judgments can only occur in the United States Supreme Court, by appeal or by writ of certiorari.  *Id.*  Under this principle, generally referred to as the *Rooker-Feldman* Doctrine, a party losing his case in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States District Court based on the party's claim that the state judgment itself violated his or her federal rights.  *Johnson v. DeGrandy*, 512 U.S. 997, 1005-06 (1994).

*Conclusion*

Based on the foregoing, Plaintiff is granted leave to proceed *In Forma Pauperis* (Doc. No. 2) and the Complaint is dismissed pursuant to 28 U.S.C. §1915(e).  The Court certifies pursuant to 28 U.S.C. §1915(a)(3) that an appeal from this decision could not be taken in good faith.[2]

IT IS SO ORDERED.

s/ Christopher A. Boyko
CHRISTOPHER A. BOYKO
UNITED STATES DISTRICT JUDGE

DATED:  June 23, 2014

_____

[2]28 U.S.C. § 1915(a)(3) provides: "An appeal may not be taken *in forma pauperis* if the trial court certifies in writing that it is not taken in good faith."

-8-